Good morning, Your Honor. Victoria Bisman, appearing today for Alexander Kravchuk. May I please the court? Petitioner appeals the decision of immigration judge entered on March 27, 2002, denying asylum, disholding of removal, and relief under Convention Against Torture. The BIA affirmed the decision of the court. I would like to emphasize that in the case that present today at the bar, petitioner is seeking review, and he is asking the court to look at the cumulative effect of the harm suffered by the petitioner and his family and parishioners of his church. What is the worst thing that happened to him? The worst thing that happened to him is basically that he is denied the right to practice his religion. He is not allowed to do what his religion calls to do. If he would try to proselytize in public in Ukraine, he will be more than just ostracized. He will be harmed. That's because his church is not registered with the government? That's because his church is non-traditional, non-native in Ukraine. Could the church register in Ukraine? His church is not registered in Ukraine, and I would like to emphasize, and I would like the court to take judicial notice of the fact that it's not that easy for the non-native churches to register in Ukraine. But they didn't want to register, isn't that right? They chose not to register? It's not simply that they chose not to register. The issue is that you have to meet certain requirements. You have to have a certain number of people that are parishioners of the church in a certain locale. You have to have funds, and you have to have the support of the local authorities and authorization from the local authorities so that you could register. And once again, they are viewed as the followers of the foreign church, something that is not native in Ukraine. But can I just follow up on Judge Silverman's question? Did the church try to register and were unable to meet the requirements? Or I understood that they didn't try because they chose not to. They believe that if they choose to register, they do not want the authorities to go in and check their finances, to check who provides financial support to the church. They believe that the requirements set by the government are unreasonable, and if they do this, they will be in effect controlled by the Ukrainian government. The SBU service that replaced the former KGB will be able to compile the data on the parishioners here, on parishioners in Ukraine, and on their supporters and the branches of the church in the United States and Germany and the other places. So that's a long answer to the question, they chose not to register, they made a decision not to register. I would try to paraphrase it and say that they chose not to because they were affronted by the requirements. They could not fulfill the requirements. They felt that they could not release certain information that could harm in the long run the parishioners. May I ask you a slightly different question? All of the incidences of past persecution seem to have occurred before the fall of the Soviet Union. Were there any incidences after the Ukrainian government? Yes, Your Honor. Ukraine gained independence in 1991-1992, and the respondent has been subjected to the persecution from 1991-1997. He was laid off from work. He had, as a matter of fact, he was forced to pay seven fines from 1991 to 2000, and this is under the independent Ukrainian government, not under the Soviet. But is being required to pay fines rise to the level of persecution? He was detained and subjected to beating in April of 2000, and as recently as September 12, 2007, his home has been vandalized by the Ukrainian Orthodox Church and the authorities did nothing to support him. When was that? It just happened recently. Okay, so that's not part of our record. It's not part of the record. However, I would like the court to take notice of this. How can we notice it? I don't know what happened. Okay, Your Honor, if I may respond. I tried to submit some new material into the record regarding the events that occurred subsequent to the decision in 2002. And subsequent to the judge's decision in 2002, half of the petitioner's family have been granted refugee status or asylum in the United States. As a matter of fact, his son, Anatoly Kravchuk, A number, 94-589-535, has been granted refugee status by the Moscow program. His mother-in-law, Dina Antonyuk, A number, 97-035-240, has been granted refugee status on July 16, 2007. His cousin-in-law, Victor Kravchuk, who is present in this courtroom, has been granted refugee status on January 16 of this year. Now, it seems to me that some of this, if there's a document or decision by the IJ or the BIA, we could take judicial notice of that if you get a proper motion. There's a statement in the IJ opinion that his wife and children still live in the same house in the Ukraine and they've not been bothered. So are you telling me now that that's not true? That's correct, Your Honor. It's not true. They have been bothered. Moreover, in July of 2007, his wife, Natalia, and five children have been granted humanitarian parole. And I would like to emphasize something to this court because the government argues that the family is not being bothered and that, you know, they are staying back there and there is nothing, you know, like to... There is a worldwide set priority system for the refugee and the United States is part of that program. And under that worldwide priority, under group two, groups for humanitarian concern, the United States leaves from the Soviet Union, former Soviet Jews, and evangelical Christians. And this program has been... Wait, wait, wait. Judge Wardlaw. We might be able to consider some of this under the doctrine of judicial notice, but you haven't filed a motion asking us to consider these grants of asylum and humanitarian parole. Okay, Your Honor, I did file two motions, one in 2005, and I submitted the copy of the documents. I filed a motion to submit and admit into evidence documents which show that, and it's substantial, how many people, members of petitioners' church, has been admitted into the United States under priority two as refugees or humanitarian parolees. You filed that in our court? Yes, Your Honor. It was a motion which we denied and it was opposed by the government because you were adding these new facts that were not before the IJ regarding the other incidents. Your Honor, but this is subsequent. The events had occurred subsequent to the decision made by the, you know, like immigration judge. Moreover, I believe that it is appropriate to file those documents because the government in its brief argues that respondents' family has been residing in Ukraine and they are not veterans. Excuse me. Have you filed or attempted to reopen the case before the immigration judge? We haven't. Have you filed a motion to reopen? We have not done it yet. You haven't? No. Thank you very much. We'll hear from the government, please. May it please the Court. My name is Sue Wong and I represent the United States, the respondent in this case. At the outset, Your Honor, the government asked the court to not consider any of the information that Petitioner has proffered to the court regarding incidents or alleged incidents that occur after the BIA decision in 2003. The court is to review the record in this case that was pending before the agency and that is the proper evidence that this court should review. And as Your Honor mentioned, the board decided this case in 2003 and Petitioner has yet to file a motion to reopen with the board since that time, despite all these incidents that Petitioner alleges occur. In any event, Your Honor, based on the record that's before this court, the Petitioner has failed to compel a contrary finding made by the agency. Again, nothing happened to Petitioner and the incidents that he described were so minor that it does not rise to the level of persecution and the immigration judge reasonably considered all of the information that was provided during the testimony and that he failed to carry his burden of showing past persecution or a well-founded fear of future persecution. May I ask a question about the procedure that the I.J. used? The I.J. looked at the two incidents prior to the change in the regime but discounted them and said, well, the regime has changed so I don't need to consider them. My understanding was that the I.J. would be required to consider all those incidents as evidence of past persecution and then the burden would, if he found that they constitute past persecution, the burden would then shift to the government to rebut the presumption of a well-founded fear of future persecution. The I.J. appeared to be doing, taking an erroneous approach. Could you address that? The immigration judge did not specifically find past persecution relating to the incidents that occurred prior to the fall of the Soviet Union. She indicated that she did not want to consider that because there was a change in regime. In other words, even if she were to find that that rises to the level of past persecution, the country condition changed so drastically that it no longer, the petitioner would no longer face likelihood of future persecution. But that is just the problem with her analysis. She conflated the analysis of whether past persecution occurred with the changed country conditions, and that's not the proper way to handle these claims under the INS. Right. The immigration judge never specifically found past persecution. She indicated that she went, it was, the government believes it was superfluous for the immigration judge to say that there was a changed regime and, therefore, she was focusing more on the incidents that occurred subsequent to the fall of the Soviet Union. She never found past persecution. And we would submit that the incident that occurred prior to the fall of the Soviet Union also did not rise to the level of persecution. So are you arguing that any error that occurred was a harmless error? Yes, Your Honor. And in this, on this record, there was no clear error. The immigration judge never found past persecution. She stated in her decision she never said there was past persecution. That's true. But didn't the I.J. not consider the two incidents prior to the changed country regime? That's how I read her opinion. She didn't say that she didn't consider. She said the weight of it was not as strong since the Soviet Union fell in 1991. And then she goes to the court. Well, she says the court may only consider the more recent incidents. I mean, she's basically saying they're inadmissible or they're irrelevant. She didn't really say. I'm quoting it. The court may only consider the more recent incidents in 1997 when he lost his job and 2000 when he was beaten. She's saying that's the only thing she'll consider. Your Honor, if the immigration judge, in fact, did determine that she did not consider the incident that arised prior to the fall of the Soviet Union, again, it's harmless error. That's because one incident he was just summoned in and asked questions and released, and in the other incident he was fined for holding an illegal gathering. That's correct, Your Honor. And can we consider harmless error for an agency determination? Is that appropriate? Would we be upholding a decision on a ground that wasn't considered by the agency under SEC v. Chanery? Your Honor, I'm not clear as to what the court means by that, that you're holding a decision that was not – I'm sorry. You're holding a finding that was not considered? Could you uphold a decision of the agency based on a harmless error analysis in the government's view? Yes, Your Honor. In this instance, again, we submit there was no error, and if there were, it's harmless error because the immigration judge again – whether or not the decision is supported by substantial evidence. Right. Right, that's our standard. So we have to ask whether substantial evidence supports the decision even without regard to the prior incidences that the immigration judge did not consider, or else we have to send it back to the immigration judge and say, under the law, you must consider these incidences and make a determination in the first instance as to whether or not they constitute past persecution. And then the burden would shift to the government to say that country conditions – that would create a presumption of a well-founded fear of future persecution, and then the government would bring in the changed country conditions, and then the burden goes back to the petitioner to say, yeah, there might have been a regime change, but I'm still being persecuted. So what we're doing – I don't think you can incorporate harmless error into the substantial evidence standard of review that we're supposed to apply. Well, Your Honor, again, the government believes that the immigration judge never specifically found past persecution, and although in her decision she made, as the government understood the immigration judge's decision, that there was no past persecution and she did not specifically state that because of changed country conditions, therefore the incidents that occurred prior to the fall of the Soviet Union negated those incidents. She clearly considered everything in her decision. She summarized the incidents. She – again, we believe she added the part where she believed that those incidents are not as pertinent as the more recent incident that occurred after the fall of the Soviet Union. And again, Your Honor, the bottom line here is that none of the incidents described by the petitioner rose to a level of persecution. Discrimination, yes. And again, the church that he belongs to and his family belongs to chose not to register. And as a result, the authorities had every reason to do what they did in that you cannot gather – if your church is not registered, you cannot have a place of worship. That's the law there. And the petitioners – the petitioner can register. His church chose not to. And all his family is still in the Ukraine, including his parents and his five siblings, who are all, according to the petitioner, of the same religion. And so we ask this Court to affirm the immigration judge's decision. And if there are no further questions, the government submits on the brief. Okay. Thank you very much, Ms. Wong. Ms. Biesman, you used up all your time, but we'll give you one minute if you keep it to a minute, please. Your Honor, I still would like to emphasize that under the Krotava, this Court should consider the combination of sustained economic pressure, physical violence and threats against petitioner and his close associates and the family. And again, going back to the reasonableness of the registration, the Court should take into consideration that the requirements set by the Ukrainian government, they are unreasonable. They are intrude into petitioner's right to practice his faith and into right of his, you know, fellow parishioners to practice their faith. There should be no requirement as to how much they make and as to how much humanitarian contributions they receive from the West. And that's the only reason that precluded, because the Church refused to answer that question, that's precluded them from the registration. Thank you very much. The case just argued is submitted. We'll now submit on the briefs 0655445, Kinder v. Lashenkal, and 0655411, Coombs v. Shamji, and 0655521, Malikian v. Conkoyan. The next case then to be argued is 0656684, Kohler v. Harrison.
judges: Silverman, Wardlaw, Ikuta